JAMES F. MCKAY III, CHIEF JUDGE
In this child custody case, the defendant, Kilee Mignon Hoskin, appeals the district court's granting of sole custody to the plaintiff, Leonard Eugene Panaro. We affirm.
FACTS AND PROCEDURAL HISTORY
By way of background, Leonard Panaro and Kilee Hoskin are the biological parents of two minor children, both sons, thirteen (13) and eleven (11) years of age. Mr. Panaro and Ms. Hoskin were never married. Ms. Hoskin has a history of drug abuse and incarceration and also suffers from a bi-polar disorder. Bonnie Buras is Ms. Hoskin's mother and the grandmother of the two minor children.
On January 23, 2014, Leonard Panaro and Bonnie Buras filed a petition for child custody with ex parte child custody order. On January 24, 2014, the district court awarded temporary joint custody to Mr. Panaro and Ms. Buras. On February 13, 2014, the district court signed a consent judgment continuing joint custody of the two minor children with Mr. Panaro and Ms. Buras. The district court, on May 22, 2014, again continued the temporary joint custody of the minor children with Mr. Panaro and Ms. Buras. The May 22, 2014 judgment also granted Ms. Hoskin unsupervised visitation every other Saturday and Sunday from 10:00 a.m. to 5:00 p.m. However, the judgment prohibited Ms. Hoskin's boyfriend at that time, Kent Vaughn, from texting or being around the children. This was followed by a consent judgment, rendered by the district court on August 21, 2014, and signed on December 2, 2014, which continued joint custody with Mr. Panaro and Ms. Buras, but allowed Ms. Hoskin to now have the children overnight on her Saturday visitations.
On August 27, 2015, the district court signed a consent judgment which granted temporary joint custody of the children to Mr. Panaro and Ms. Hoskin, subject to a six month review by the court. Also contained within this consent judgment was the prohibition of Kent Vaughn having any contact with the two minor children.
On October 22, 2015, Ms. Hoskin violated the district court's August 27, 2015 judgment by allowing the two minor children to be in the presence of Kent Vaughn and travel in his vehicle. Thereafter, on October 23, 2015, Mr. Panaro and Ms. Buras filed a motion for contempt and to change child custody with an exparte order. The district court signed the ex parte order awarding temporary joint custody back to Mr. Panaro and Ms. Buras. At the *999 same time, Ms. Hoskin's attorney, Patrick Eskew, filed a motion to withdraw, which the trial court granted.
On October 27, 2015, Ms. Hoskin hired a new attorney, Taetrece Harrison, who filed an answer and reconventional demand on behalf of Ms. Hoskin. A trial regarding the ex parte temporary custody order, signed on October 23, 2015, took place on November 16, 2015. After hearing testimony from several witnesses including Ms. Hoskin and Ms. Buras, the court issued an order continuing the temporary joint custody in favor of Mr. Panaro and Ms. Buras. Ms. Hoskin was granted visitation to be exercised at the residence of Mr. Panaro. The court again ordered that Kent Vaughn, who was now Ms. Hoskin's husband, have no contact with the children. In addition, the court appointed Julie C. Ruel, LPC to conduct a detailed custody evaluation.
On March 18, 2016, Mr. Panaro and Ms. Buras filed a second motion for contempt with ex parte termination of visitation, alleging that Ms. Hoskin again allowed Kent Vaughn to be around the two minor children. The court then held a status conference with counsel for both parties and Ms. Hoskin. Following the status conference, the court signed an order terminating Ms. Hoskin's visitation rights.
On March 23, 2016, Mr. Panaro and Ms. Buras filed a motion for injunction with implementation of parental guidelines. The injunction dealt with alleged defamatory/derogatory comments about Mr. Panaro and Ms. Buras that Ms. Hoskin posted on her Facebook page, knowing that one of her sons had access to her Facebook postings. This was followed by the withdrawal of Ms. Harrison as counsel for Ms. Hoskin on April 4, 2016. On May 3, 2016, Rachel Marinovich enrolled as Ms. Hoskin's third counsel of record.
On May 20, 2016, Mr. Panaro and Ms. Buras filed a motion to dismiss Ms. Hoskin's reconventional demand, contempt of court and request for permanent custody with incorporated memorandum. The motion to dismiss the reconventional demand was based on Ms. Hoskin's delays in completing the evaluation due to her failure to pay the evaluator as required by the court's December 1, 2015 order. On June 7, 2016, the district court denied Mr. Panaro's and Ms. Buras's motion to dismiss Ms. Hoskin's reconventional demand, while the hearing on the second motion for contempt was continued with the first motion for contempt.
On August 3, 2016, Mr. Panaro and Ms. Buras filed a motion for emergency order for drug testing of Ms. Hoskin. The district court set the hearing for August 15, 2016. At the hearing, Rachel Marinovich appeared without her client; she represented to the court that she attempted to contact her client without success. The court then issued a judgment ordering Ms. Hoskin to submit to a ten (10) panel hair drug test on or before August 19, 2016. Ms. Hoskin failed to meet this deadline. Thereafter, on August 23, 2016, Mr. Panaro and Ms. Buras filed a third motion for contempt. A hearing took place on September 6, 2016, where Rachel Marinovich again appeared without her client, representing that she was unable to contact Ms. Hoskin and did not know her current whereabouts. The court found Ms. Hoskin to be in contempt of court and ordered that she have no contact with the children pending further order of the court. The results of the ten (10) panel hair drug test were eventually filed into the record of this proceeding on January 12, 2017. The results indicated that the drug test was taken on November 14, 2016, and Ms. Hoskin tested positive for Cocaine, Marijuana and Benzoylecgonine.
Prior to trial on the issue of permanent custody, two important events occurred. First, on September 23, 2016, Ms. Hoskin *1000 called the Jefferson Parish Sheriff's Office to Kent Vaughn's home alleging that he had physically assaulted her and had stabbed her in the arm. She later admitted that she had lied to the police and that her injuries were self-inflicted. The second incident took place on October 5, 2016, when she self-admitted herself at the emergency room of University Medical Center with suicidal thoughts. She remained at the hospital until October 8, 2016, when she was discharged. Her psychiatric diagnosis upon discharge was: "Unspecified Bipolar 1 disorder, mild, in partial remission, Opioid use disorder, severe, in remission, Cannabis use disorder, mild, in partial remission, Borderline and Narcissistic personality traits, Parent-child relational problem, Relational Distress with Spouse and Other Adverse Effect of Medications."
On November 28, 29 and 30, 2016, the district court held a trial on the issue of custody and the previous motions for contempt that were filed by Mr. Panaro and Ms. Buras. On May 22, 2017, the district court issued a judgment awarding sole custody of the two minor children to Mr. Panaro. The court also ordered that Ms. Hoskin shall have therapeutic supervised visitation with the minor children through Sinfonia Family Services of New Orleans every other weekend for up to four hours at Ms. Hoskin's expense. The court also found Ms. Hoskin to be in contempt of court for failure to abide by the court's August 27, 2015 and November 19, 2015 judgments and ordered her to perform thirty (30) eight (8) hour days of community service. Ms. Hoskin now appeals the district court's granting of sole custody of the minor children to Mr. Panaro.[1]
DISCUSSION
The Louisiana Supreme Court has described the appellate review standard by stating that "upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review on the absence of a clear showing of abuse." Bergeron v. Bergeron, 492 So.2d 1193, 1196 ; See also AEB v. JBE, 99-2668, p. 7 (La. 11/30/99), 752 So.2d 756, 761.
Louisiana Civil Code Article 132 provides:
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.
In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.
Louisiana Civil Code Article 134 deals with the best interest of the child. That statute states:
The court shall consider all relevant factors in determining the best interest of the child. Such factors include:
1) The love, affection, and other emotional ties between each party and the child.
2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
*1001 4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
6) The moral fitness of each party, insofar as it affects the welfare of the child.
7) The mental and physical health of each party.
8) The home, school, and community history of the child.
9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
11) The distance between the residences of the parties.
12) The responsibility for the care and rearing of the child previously exercised by each party.
"The best interest of the child standard, mandated by La. C.C. arts. 132 and 134, is a 'fact-intensive inquiry requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented.' " Hilkirk v. Johnson, 2015-0577, p. 34 (La.App. 4 Cir. 12/23/15), 183 So.3d 731quoting Lannes v. Lannes, 2007-0345, p. 4 (La.App. 4 Cir. 2/13/08), 977 So.2d 1119, 1121. The factors outlined within Article 134 have been construed to be nonexclusive, "and the trial court has the discretion to determine the relative amount of weight to be given to each factor." Hilkirk, 2015-0577, p. 34, 183 So.3d at 740citing Hanks v. Hanks, 2013-1442, p. 9 (La.App. 4 Cir. 4/16/14), 140 So.208, 215 (citing Palazzo v. Mire,2008-0075, p. 34 (La.App. 4 Cir. 1/7/9), 10 So.3d 748, 768 ). "The court is not required to analyze mechanically all of the dozen factors, rather the court should balance and weigh the factors in view of the evidence presented." Id.; See also Alfonso v. Cooper, 2014-0145, p. 237-38 (La.App. 4 Cir. 7/16/14), 146 So.3d 796, 797.
In the instant case, the court heard from numerous witnesses and reviewed exhibits including medical records pertaining to Ms. Hoskin's mental health. The court heard testimony from Julie Ruel, LPC as to her findings/recommendations after a detailed custody evaluation. The court also heard from teachers regarding the improvement of the behavior and grades of both children since Ms. Hoskin has not had any custody of them. The evidence supports that awarding sole custody to Mr. Panaro is in the best interest of the children.
CONCLUSION
Based on the foregoing reasons, we find no error or abuse of discretion in the district court's awarding of sole custody of the two minor children to Mr. Panaro.
AFFIRMED

Based on what Ms. Hoskin has filed with this Court, it does not appear that she is appealing the district court's holding her in contempt.